**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE**

```
------------------------------)
                              )
Joao Control and Monitoring   )
Sytems of California, LLC,     )
                              )
              Plaintiff,       )
                              )
    v.                         )      No. C 11-6277 (EMC)
                              )
Sling Media, Inc., et al.,     )
                              )
              Defendants.   )      San Francisco, California
                              )      Friday, April 6, 2012
------------------------------)        (17 pages)
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          Heniger, Garrison, Davis, LLC
                        220 Saint Paul Street
                        Westfield, New Jersey 07090
                   BY:  MAUREEN VICTORIA ABBEY

For Defendants:         Morrison & Foerster, LLP
                        425 Market Street
                        San Francisco, California 94105
                   BY:  RACHEL KREVANS

Friday, April 6, 2012

(3:17 p.m.)

**(In open court)**

DEPUTY CLERK:  Calling C 11-6277, Joao Control and Monitoring System of California versus Sling Media.

Come forward and state your appearances at the podium, please.

MS. ABBEY:  Good afternoon, your Honor.  Maureen Abbey for plaintiff.

MS. KREVANS:  Rachel Krevans, Morrison, Foerster, for the defendant.

THE COURT:  All right.  Good afternoon, Counsel.

So we have this sort of interesting divide, technical issue, about *Twombly/Iqbal* versus Form 18, I guess it is.  At the end of the day, I'm not so sure it makes a whole lot of difference.  Maybe I'm trying to avoid the issue here, but if one were to look at Form 18, and the gist of Form 18 is that you have to identify the patent, and then you have to identify with some description the accused device or devices so that the defendant understands what it is, and with an allegation that the accused devices embodied in the patented invention and notice and -- statutory notice, etc., etc., without going into element by element, you know, infringement contentions and all that -- I'm not sure

that's inconsistent with *Iqbal* and *Twombly* because that states a, quote, plausible claim with some level of specificity, giving notice to the other side, what the gist of the matter is.

In any event, it seems like here the main claim of defendant is that, you know, there's not been a description, an adequate description, and the description that's been given is inherently capable of infringement here, and I don't think I agree with that. I think that there's been a description of a system, a Sling box system here, which has different components. It's got the main component that hooks up to the video output device, the cable box, whatever, and it's got a computer on the other end, and software, etc., etc., as well as a variety of other ancillary things. But, you know, whether it actually -- whether or not there's a claim here is -- you know, we'll find out, but it seems to me that -- I'm not convinced that neither Form 18 nor *Twombly* or *Iqbal* has not been satisfied here.

MS. KREVANS: Let me say a couple of things. First, I think you could actually decide this without worrying about the difference, whatever it is, between *Twombly* and *Iqbal* and Form 18. Because if you look at Form 18, the example that's given there, it says you have an invention to an engine, and then the complaint says --

I'm sorry, an electric motor, and the complaint says the defendant has an electric motor.

But if you look at these claims, what they say is, the invention is a device in location Number 1, and a second device in a different location, Number 2, and a third device in a different location, Number 3.  And all they've alleged -- so the Form 18 version of that would be:  Electric motor Number 1 in place Number 1; electric motor Number 2 in place Number 2; electric motor Number 3, place Number 3.  They haven't alleged that in their complaint.

And if you look at their opposition brief, the only place you can find the description that you're talking about, if you look at their opposition brief, is on Pages 2 to 3 in the brief.  And if you look at all the citations there, none of those are citations to the complaint.  They're citing material that wasn't in the complaint at all.  They attached a declaration to their opposition, and they've got an exhibit to the declaration and some pages from a website, and that's all the things that they're citing.  I mean, their brief is essentially an admission that these things are not --

THE COURT:  Well, except you say -- you have to show Form 18 contemplates that you demonstrate the device of location Number 1, location Number 2, location

Number 3.  Form 18 doesn't do that.  It just says, We've got a patent on an electric motor, and not that the -- here are the four critical elements of the patent, and therefore -- and that the accused electric motors owned by the defendant has each of these elements in this manner.  Doesn't get to that level of specificity.  Just says, got a patent that covers the electric motor.  And they've got electric motors that embody the patents.

MS. KREVANS:  I think, your Honor, it's giving a very simple example.  When you take that example and you apply it to this patent, this patent doesn't just require a motor.  It requires, in effect, three motors in different places, and they clearly haven't alleged that, and to try to show that they have it, they have to go outside the complaint.

THE COURT:  And given -- you know, I'm going to merge this into a case management -- but given the fact that under the proposed schedule here, that if we were to go forward, we're going to have a claims chart within days, weeks or whatever, what are we accomplishing by saying, No, go back to the drawing boards and -- go back and increase the level of specificity, show us where processing device for location Number 1 is, show us exactly where it reads on to each of the -- when in fact, according to what you all want to do, is by May 16th we'll

have the infringement contentions.

MS. KREVANS:  Well, I think, as I said, that schedule was geared to the notion that it would be ordered at the original conference.  But because it got bumped, I think it would need to get shifted back a bit to account for -- but I think what we'd be accomplishing here is if you look at what they now ask you to treat basically as if it were in their complaint, all this extra complaint material, if you look at what they're setting out here, this is material that if it were in their complaint, we would still be saying, as we said in our reply brief, Fails to state a claim on which relief can be granted, because it's black letter law from the Supreme Court that if you sell a device that comes with software but the claim can only be infringed in that software's installed in a different device, which doesn't happen, until after the customer buys it and then the customer installs it on their own device, you haven't infringed, because uninstalled software can't infringe.

What they're pointing to is the second device. We don't think it's a device, but what they're pointing to as the second device is software that gets installed by the customer on their computer.  That, as a matter of law, also can't be infringed.  So I think what's actually been accomplished here is that when we said to them, hey,

through our pleading, our motion, your complaint fails to state a claim on which relief can be granted, and they had to come forward with an actual estimation of their theory, what we now see is their theory is one which can never succeed because even if it were in the complaint, it does not state a claim for direct infringement of these claims.

THE COURT: What's your response to this, that there is something to be gained -- before we get into the long battle of infringement contentions and then followed by claim construction and everything else, before we even get to summary judgment, why isn't there -- why isn't there something to be gained from a higher level of specificity here, particularly when it sounds like -- certainly, I have to say, with respect to the first patent, I'm not sure I understand where the three locations or devices are.

MS. ABBEY: Okay. Your Honor, we do, in fact, in our initial complaint include all the information. It's just not with the specificity that would be required, as you pointed out for infringement contentions. Which is where we plan to lay out the full extent of the infringement that we are alleging.

The complaint does identify the Sling box systems. Everywhere in defendant's motion they refer to Sling box as the one device, and that is not what we have

in our complaint.

THE COURT:  Even with the system, I'm not sure I understand with respect to, first, claim Number 130, that has three control devices, all remote from each other.  My understanding of Sling box is that you've got a box itself, which gathers the data, and then it's controlled through computer, armed with some software, sends a signal, tells it what to do, send it to your phone or send it to a computer or whatever.

MS. ABBEY:  Can I respond?

THE COURT:  Maybe you can explain that to me.

MS. ABBEY:  Sure.  What we do say in our complaint is the Sling box systems and the associated hardware and software are configured to be remotely controlled, one of our video recorders, so it's in this particular statement, our complaint, that we identify the additional components of the Sling box system.

That's on the first amended complaint, 48.

THE COURT:  Forty-eight.

MS. ABBEY:  48.

THE COURT:  Well, it doesn't describe it with any specificity.  Just says it just describes Sling box -- Sling or Sling box devices, i.e., the Sling systems and associated hardware and software.  And that's what the whole issue is.  Is there some utility to requiring

perhaps not a full chart, but some description so that at least plausibly -- we know there's a plausible case of infringement here?  In other words, you wouldn't even have to identify every single embodiment of every single device, but just an e.g. -- for example, reading *Twombly* and *Iqbal* and Form 19 in that fashion, you have to give some indication that this case ought to proceed.

MS. ABBEY:  The *Iqbal* and *Twombly* cases dealt with more allegations that were detail-specific in which the individuals claiming -- asserting particular claims in those cases needed to pleaded with factual specificity. In this case, it is clear that for direct infringement, using Form 18, and in giving a description such as what we have here, is sufficient, and that's been discussed in *Microsoft v Phoenix* solutions as well as other cases where there has been -- there has been a split in the courts, but in districts where there are the early -- local patent rules with early infringement contentions that allow for the detailed description of infringement early on in the case, that what is set forth in the complaint is summary descriptions, which is what's placed here in the first amended complaint should be sufficient under *Microsoft v Phoenix Solutions*.

With respect to the other allegations, I believe defense counsel is converting this into a Rule 56

discussion, whereas we would request the time to fully brief that question rather than do it on the fly here. But it is our position that the hardware that the Sling box device that would be at the home, the web server web account where the user can access the account over the Internet that would control their Sling box device at the house, and then Sling player, which is also software that can be downloaded to a computer, iPad or an iPhone, to then another third control device, but it's basically relying upon software from the defendant, from Sling box, the media.

THE COURT:  So you're saying that the computer loaded with the software is one device that then communicates with the server which is a second device, communicates with the Sling box device which, is the third?  Is that the idea?

MS. ABBEY:  First device would be the Sling box. But it's the same idea, your Honor, that's correct.  And that would be for Claim 130 patent.  For the other patent, the claims do read slightly differently, so it is slightly different.  So the concerns defense counsel raises with the '130 patent may not arise with the '046 patent.  I believe the circumstances are different in how the claims read.  That we presented in our opposition brief, but there are other claims as well that we would want to have

the opportunity to fully disclose the infringement read and prove our case as opposed to --

THE COURT:  So if I were to go through the exercise of requiring them to amend the complaint to add this level of specificity, at least give an indication of what they think the first control device is, second control, third device, without going through the full chart, at this point, and having that come in due course, what are we gaining there?

MS. KREVANS:  We would bring a motion to dismiss because all the pleadings, we believe, that -- would not state a claim on which relief could be granted.  Because now we have the benefit of their explanation of what they really meant, we can see that part of what they're relying on is that one of the these devices which in fact is software which is not on any device when Sling sells it, but which the customer loads on their own electronic device, and that can't be infringement by Sling.  It cannot be direct infringement, as a matter of law.

So what we would ask would be -- we have this set forth in our file.  We think we could do it right now, now that we've seen their explanation.  But a more formal way would be to have them plead it, we would bring a motion to dismiss that candid pleading when we see what they're really doing on the basis that it cannot be direct

infringement by Sling because we have Supreme Court case law that says so.

THE COURT:  So it tees up the question, whether software --

MS. KREVANS:  That's right.  And we think we're entitled to have that question decided.  It's not a Rule 56 motion.  It is a Rule 12 motion.  We were told to have that question decided without having to proceed with the expense of litigation that will have no point.  That is the exact purpose of Rule 12.

THE COURT:  Sounds like there's some utility to that.  Rather than going through this complex process of having to go through an elaborate claims chart, if there is a discrete legal issue here, with respect to this question, which I think you can foresee coming, it may make sense to resolve that question early on.  It's -- I don't think it's a fact-intensive question -- or is it?

MS. ABBEY:  I believe that there would be some arguments in our position that the Supreme Court case would -- we have some arguments to make, factual arguments to make, as well as legal, to challenge defendant's position.

THE COURT:  That might also enlighten or inform your assessment of what needs to be included in a complaint.  Because again, this is a 12(b)(6) motion, not

a Rule 56 motion.  So if you're anticipating a Microsoft-type software challenge, software theory challenge, you know, then perhaps you're forewarned to put in whatever the facts are you think, and then we'll test it at that point.

But all I'm saying is maybe there is some utility in this situation of proceeding on that basis rather than waiting and going through and having to incur a lot of time and expense when there seems to me right upfront there is a straight-up issue.

MS. ABBEY:  We're pretty confident that we can prevail on infringement in this case.  But I understand.

THE COURT:  We would accomplish that, and they would have learned something, that they've got a litigation risk, that's it's not going to be thrown out on that theory, that perhaps I would -- I'm persuaded by your interpretation of the law.

But it does seem to me it advances the litigation.  At the end of the day, it would advance the litigation.  I don't like to make people replead things if, in fact -- and it's not really going to do anything. But in this case, under the specific facts of this case and the issues that have now been teed up, sounds like it might be.

MS. KREVANS:  And your Honor, I would say I

think, in fairness to plaintiff, we have given them in our reply a preview of the argument we would make in such an amended pleading, based on the Microsoft case in the Supreme Court, and the Santlate(ph) case in the federal circuit, which we think means we can accept a complaint that they would revise to plead -- as stated in their brief, we would say, accepting those allegations to be true, we think there is still no good claim here.  And I think that would be a useful thing for everybody, to move forward before the Court.

THE COURT:  I am going to grant the motion to dismiss with leave to amend.  I do so because there is utility to be gained here, sort of a preinfringement charge or contention charge process, and I think the level of specificity is warranted here because of the plausibility standard set forth in *Twombly* and *Iqbal*, and that given the nature of the device here, and not just the Sling box but everything -- the complete system -- and given how -- the nature of the two patents at issue here, but particularly the first one -- the 130, right?

MS. ABBEY:  Yes, your Honor.

THE COURT:  The 130, which requires three devices, I do think that the Court and the process and the parties would benefit by having a more specific articulation as to how the accused devices, including the

software, hardware, all the whole system, infringes.  And without that, I don't think the plausibility standard is met.

On the other hand, I've also made it clear that I'm not expecting that if you plead a very detailed infringement contention chart or anything of that nature, that would be at a later date.  Essentially, the software issue that's been raised by the defendant.

So I don't know if you need 30 days or -- how long do you need to file an amended complaint?

MS. ABBEY:  30 days is more than fine.  I mean, your Honor.

THE COURT:  All right.  Then 30 days from today's date to file an amended complaint, and you can anticipate a motion to dismiss, once we know what the case is going to look like.  And again, it should inform you in terms of what you think should be put in the complaint so we can tee this up properly.  I don't want to go through a series of motions to dismiss.  Let's just do it, it either is or isn't, and we go on to the next stage, and I think what I should do is move the -- it doesn't make sense to set dates now, but I'll have to move the case management conference to the date of the hearing.  I'll set a control date for further status conference just in case, but that will be, in all probability, consolidated with the Rule 12

hearing.  So we'll set something out 60 days out, but anticipating that it would be moved.  Betty?

DEPUTY CLERK:  June 8th at 1:30.

MS. KREVANS:  I'm in trial that week, your Honor. That may be fine, given you think it's likely to move, but...

THE COURT:  Do you want to go the week after?

DEPUTY CLERK:  June 22nd.

THE COURT:  At 2:30.

DEPUTY CLERK:  Will you be filing a motion to dismiss?  Is it a motion calendar?

THE COURT:  No, they're going to notice the motion.  I don't know exactly whether it's going to be --

DEPUTY CLERK:  10:30 then.

MS. KREVANS:  Do you know what day of the week that is?

THE COURT:  It's a Friday.

MS. KREVANS:  I'm sorry to be difficult.  You picked practically the only two days I can't do it in June.  Anytime in the week before or the week after works for me.

DEPUTY CLERK:  June 1st.

MS. KREVANS:  That's when I'm still in trial. The week of the 11th or the 25th?

THE COURT:  How about the 29th?  We'll probably

move it anyway.  This is just a control date.

DEPUTY CLERK:  July 6th at 10:30.

MS. KREVANS:  Sounds lovely.

THE COURT:  See you back on the Rule 12.

MS. ABBEY:  Thank you.

MS. KREVANS:  Thank you, your Honor.

DEPUTY CLERK:  Court is adjourned.

(Adjourned)

oOo

CERTIFICATE OF REPORTER


        I, Connie Kuhl, Official Reporter for the United
States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by
me, a certified shorthand reporter, and were thereafter
transcribed under my direction into written form.

_____

Connie Kuhl, RMR, CRR
Monday, May 10, 2012