UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS OF CALIFORNIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SLING MEDIA, INC.,<br><br>Defendant.<br>_____/ | No. C-11-6277 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 231)** |

## I. INTRODUCTION

Plaintiff Joao Control & Monitoring Systems of California, LLC filed a complaint against Defendant Sling Media Inc. for patent infringement of two different patents. Pending before the Court is Sling Media's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant contends that Plaintiff has failed to state a claim for relief as required by Federal Rule of Civil Procedure 12(b)(6). The Court previously dismissed Plaintiff's First Amended Complaint with leave to amend, so that the parties could address whether Plaintiff's infringement allegations were barred as a matter of law under controlling Federal Circuit precedent. Docket No. 228. Having considered the parties' submissions and oral argument, and for the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to dismiss.

///

///

///

## II. FACTUAL & PROCEDURAL BACKGROUND

Joao Control & Monitoring Systems of California, LLC ("Plaintiff") filed a First Amended Complaint on February 22, 2011, in the United States District Court for the Central District of California against multiple parties, including Sling Media, Inc. ("Defendant"), alleging patent infringement of five different patents. Docket No. 74 at 1. The parties agreed to have the claims against Defendant Sling severed and transferred to this Court, and on April 14, 2011, Judge Carter issued a Severance and Transfer Order. Docket No. 216 ("Joint Case Management") at 2-3.

Defendant's first motion to dismiss argued that Plaintiff had failed to plead enough facts to show that Defendant directly infringed the '130 and '046 patents, which require the combination of equipment situated at a premises or vehicle, plus two additional devices situated at separate remote locations. Defendant additionally argued that even if properly alleged in terms of factual detail, Plaintiff's complaint would fail to state a claim because it relied in part on uninstalled software that only infringes once it is installed on a customer's computer. Defendant argued that such allegations failed to state a claim of infringement *by Sling* as a matter of law. Docket No. 232 (Transcript of Hearing), at 9-11. Plaintiff argued that Defendant's position depended on factual and legal disputes that cannot be resolved until claims construction and summary judgment, and that Defendant's arguments are ill-suited to a motion to dismiss. The Court ordered Plaintiff to file an amended complaint setting forth its factual claims in greater detail and teeing up the parties' legal dispute as to the viability of its allegations.

Plaintiff's SAC alleges that Defendant has infringed two patents: U.S. Patent Nos. 6,549,130, entitled "*Control Apparatus and Method for Vehicles and/or Premises,*" (the "'130 patent") and 6,587,046, entitled "*Monitoring Apparatus and Method,*" (the "'046 patent"). SAC ¶ 1, 10-13. Plaintiff is the owner of these patents, and possesses the right to sue for infringement and recover past damages. SAC ¶ 2. Defendant "owns, operates, advertises, controls, sells, and otherwise provides hardware and software for 'control apparatuses for premises systems' including the Sling Slingbox and associated hardware and software ('the Sling systems')." SAC ¶¶ 10, 12. The Slingbox is a device that can be attached to, and used to control, a television receiver or other equipment: The Slingbox sends video content via the Slingbox server system to the consumer who

can use his or her personal computing device (*e.g.* laptop, smartphone, etc.) to wirelessly connect to a Slingbox (via the server system) and remotely view content from the Slingbox which is attached to the television receiver. Motion at 2. Plaintiff asserts that Defendant has infringed and continues to infringe one or more claims of each patent by "making, using, providing, offering to sell, and selling (directly or through intermediaries) . . . systems for remotely controlling video systems, including the Sling systems." SAC ¶¶ 10, 12.

The '130 patent describes three physically and geographically-separate components: a "first control device," a "second control device," and a "third control device." *Id.* ¶ 10. For example, apparatus claim 1 describes the three required control devices as follows:

> 1. A control apparatus, comprising:
> a first control device, . . . wherein the first control device is located at the premises . . . , . . . a second control device, wherein the second control device is located at a location which is remote from the premises . . . , . . . a third control device, wherein the third control device is located at a location which is remote from the premises and remote from the second control device . . . .

SAC, Ex. 1 ('130 patent) at 74:59-75:19 (claim 1). Plaintiff alleges that the "Slingbox devices including Pro-HD, SOLO, 120, PRO and others constitute a first control device purchased and used by the Sling Customer at the premises." SAC ¶ 10. Plaintiff alleges that the "Slingbox server system and associated software that supports its website 'accounts.sling.com'" constitutes the second control device. *Id.* Sling customers must set up a Sling Account in order to use the Sling systems. *Id.* Finally, the third control device is comprised of the "SlingPlayer and alternatively or in combination, SlingRemote," which "enables the Sling Customer to remotely view television programming broadcast via the Sling Customer's home television." *Id.* SlingPlayer is software that the Sling Customer must download to his or her "PC, Mac, tablet, smartphone or Internet connected device." *Id.* Plaintiff alleges that the Sling devices infringe multiple claims of the '130 patent, and that Defendant is liable for direct infringement through vicarious liability because it "directs and controls" its customers' infringement.

Similarly, the '046 patent requires the use of separate devices – a "processing device" and a "communication device" that must also be situated at separate locations remote from the "video recording device." SAC Ex. 2. For example, under claim 30, Plaintiff alleges that the patent

3

requires "a *processing device* – the Sling Systems server system and associated software ("Sling Server System") – which receives video information from a *video recording device* – the Slingbox devices (Pro-HD, SOLO, 120, PRO and others) where the Slingbox device(s) is located at a premises and the Sling Server System is remote from the premises." SAC ¶ 12 (emphasis added). Plaintiff further alleges that the "Sling Server System receives signals transmitted from a *communication device* that is remote from the Sling Server System and remote from the premises." *Id.* (emphasis added). Such a communication device includes a "PC, Mac, tablet, smartphone or Internet connected device." *Id.* "The Sling Customer sets up a Sling Account at 'account.sling.com' via the communication device and downloads software [provided by Sling] as an account holder . . . ." *Id.* The customer then "uses the software as provided and directed by Sling Systems in order to transmit signals to the Sling Server System to have video information transmitted from the Slingbox to the communication device using the Sling Server System." *Id.* As with the '130 patent, Plaintiff alleges that Defendant is liable for direct infringement through vicarious liability because it "directs and controls" its customers' infringement.

Defendant filed a motion to dismiss, arguing that Plaintiff's infringement allegations are not legally viable because Sling does not make or sell the personal computing devices that, it argues, are necessary elements required by each of the claims (*i.e.*, the "third control device" in the '130 patent and the "communication device" of the '046 patent). Defendant argues, *inter alia*, that the mere provision of software which the consumer chooses to download into his or her personal computer device is insufficient to establish infringement.

### III. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss under Rule 12(b)(6), a court must take all of the factual allegations as true and construe them in the light most favorable to plaintiff. *See Leatherman v.*

*Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Showing an entitlement to relief does not require "detailed factual allegations," but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that merely gives "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not be sufficient. *Id.*

B.   Direct Infringement

In the instant case, Defendant contends that Plaintiff's complaint fails to state a claim because Plaintiff's allegations make clear that Defendant cannot have infringed the patents at issue based on controlling Federal Circuit law. Defendant argues that the two patents-in-suit each require multiple devices in remote locations, and that Defendant does not make, sell, or use each of those devices. In addition, Defendant argues that Plaintiff has failed to plead facts sufficient to allege vicarious liability for others' direct infringement.

1.   Direct Infringement by Sling

Direct infringement claims are governed by 35 U.S.C. § 271(a), which states, "whoever without authority *makes, uses, offers to sell, or sells* any patented invention . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). In determining whether direct infringement has occurred, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not the invention as a whole." *Warner-Jenkison Co v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *accord Pennwalt Corp. v. Durant-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (holding that an accused system must contain every element of a claimed invention, either literally or equivalently, to be judged an infringement). "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed. Cir. 2007). In other words, "liability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." *Id.* at 1380.

In the context of motions to dismiss under Rule 12 and federal pleading standards, the Federal Circuit has recently confirmed that a plaintiff need not "describe precisely how each element of the asserted claims are practiced" in order to assert a plausible direct infringement claim. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.* ("*Bill of Lading*"), 681 F.3d 1323, 1335 (Fed. Cir. 2012).[1] Instead, a plaintiff need only satisfy the requirements of Form 18 in the Appendix to the Federal Rules of Civil Procedure. Form 18, which is entitled "Complaint for Patent Infringement," provides a sample complaint for direct patent infringement. Fed. R. Civ. P. Appx., Form 18. The form instructs a plaintiff to include:

> 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; 4) a statement that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages.

---

[1] The Court notes that *Bill of Lading* is technically not binding on this Court, as the Federal Circuit explained that it reviews "an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted . . . under the applicable law of the regional circuit," in that case the Sixth Circuit. *Bill of Lading*, 681 F.3d at 1331. However, in the course of its Form 18 analysis as it relates to a motion to dismiss, *Bill of Lading* relied on the Federal Forms, Supreme Court authority, and its own prior authority in *McZeal*, which purported to apply Fifth Circuit law; the Federal Forms have been widely applied by courts within this Circuit. *See id.* at 1333-36; *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010) ("This Court agrees with the Federal Circuit and those district courts that have held that a party alleging direct infringement need only comply with Form 18."); *Discflo Corporation v. American Process Equipment, Inc.*, No. CV 11-0467 BTM, 2011 WL 6888542, at *1 (S.D. Cal. Dec. 29, 2011) ("*Iqbal's* heightened pleading standard does not apply to claims of *direct* patent infringement under § 271(a), since Form 18 . . . sets forth an example for pleading direct infringement requiring minimal allegations, and Rule 84 clarifies that '[t]he forms in the Appendix suffice[.]'"); *Guzik Technical Enterprises, Inc. v. Western Digital Corporation*, No. CV 11-03786 PSG, 2011 WL 6013006, at *2 (N.D. Cal. Dec. 2, 2011) ("In recognition of the primacy of Congress and 'under Rule 84 of the Federal Rules of Civil Procedure, . . . a court must accept as sufficient any pleading made in conformance with the forms.'") (quoting *Elan Microelectronics Corp. v. Apple Inc.*, No. C 09–01531 RS, 2009 WL 2972374, at *2 (N.D. Cal. Sept.14, 2009)); *Kelora Systems, LLC v. Target Corporation*, No. CV 11-01548 CW, 2011 WL 2149085, at *2 (N.D. Cal. May 31, 2011) (holding that pleading was sufficient because it satisfied the requirements of Form 18). In addition, as the only circuit court to directly address the issue, and because of Form 18's specific application to patent law, *Bill of Lading* is "strongly persuasive authority" which the Court finds no basis to reject. *Conte v. Jakks Pac., Inc.*, 1:12-CV-0006 LJO GSA, 2012 WL 3069971, at *2 & n.1 (E.D. Cal. July 27, 2012); *see also Pagemelding, Inc. v. ESPN, Inc.*, C 11-06263 WHA, 2012 WL 2285201, at *1 (N.D. Cal. June 18, 2012) (applying *Bill of Lading* to direct infringement claim). Absent binding authority to the contrary, the Court adheres to *Bill of Lading*.

1  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Form 18 provides an example
2  of how a patentee can plead infringement regarding an electric motor. For steps 2 and 3 described
3  above, Form 18 provides the following example:

> 2. On *date*, <Date>, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.
>
> 3. The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

Fed. R. Civ. P. Appx., Form 18 (emphasis in original).

      As the Federal Circuit recently held in reaffirming *McZeal*, "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Bill of Lading*, 681 F.3d at 1335 (citing *McZeal*, 501 F.3d at 1357). Instead, "[a]s long as the complaint in question contains sufficient factual allegations to meet the requirements of Form 18, the complaint has sufficiently pled direct infringement." *Id.* at 1336. Such minimal pleading satisfies the need to "place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357. "[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control." *Bill of Lading*, 681 F.3d at 1334 (citations omitted).

      As currently pled, the amended complaint includes each of the five required elements under Form 18: (1) an allegation of jurisdiction; SAC ¶¶ 4-7; (2) a statement that Joao owns the patents-in-suit, SAC ¶¶ 8-9; (3) a statement that Sling infringes the patents under 35 U.S.C. § 271, SAC ¶¶ 10, 12; (4) notice to Sling of its infringement, SAC ¶ 14; and (5) a demand for injunction and damages, SAC ¶¶ D-E. Under *Bill of Lading*, this is sufficient to withstand a motion to dismiss.

      Defendant's arguments to the contrary are predicated on matters that exceed the requirements of Form 18, and require the Court to delve into a greater level of specificity and examination of the scope of Plaintiff's patent claims than required by the Form. Thus, Defendant's

arguments with respect to claims of direct infringement by Sling are "premised on a pleading standard that is too stringent." *Bill of Lading*, 681 F.3d at 1335.

That Defendant's argument requires the Court to venture beyond the pleading is illustrated by Defendant's assertion that each claim of the patents at issue require a device Defendant does not make, use, or sell (*e.g.*, the customer's personal computer); but resolution of this dispute requires construction of the claims. Indeed, Plaintiff's opposition highlights this point, stating that "Defendant is wrong in its assertion that 'the claims of the '130 and '046 Patents are all combination claims' requiring three separate devices, and is based upon on an erroneous interpretation of the claim(s)." Opp. at 10; SAC ¶ 10 (describing Sling software as "the third control device" in the '130 Patent). Likewise, to the extent Plaintiff alleges that the SlingPlayer and/or SlingRemote *software* constitutes a device within the meaning of any of the claims, and/or that certain claims do not require the customer's computer in order to infringe, the Court is not currently in a position to resolve that dispute through a 12(b)(6) motion.[2] *See, e.g.*, *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 888-90 (N.D. Cal. 2011) (rejecting defendant's argument on a 12(b)(6) motion that "every independent claim outlined in the Ozawa Patent requires at least three separate devices," and that defendant does not make, use, or sell one of those devices, because such arguments are "about what the Ozawa Patent's claims cover[, which] is exactly what claim construction is meant to answer") (internal citations omitted); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1308-09 (Fed. Cir. 2011) (rejecting Microsoft's motion for judgment as a matter of law based on its argument that the plaintiff had "failed to prove direct infringement because Microsoft did not supply or use the end-users' computers that implemented" Microsoft's software, because the specific claims at issue focused only on Microsoft's conduct), *reh'g denied* (Mar. 22, 2011); *see generally O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("The purpose of claim construction is to 'determine the meaning and scope of the patent claims asserted to be infringed.'")

---

[2] Indeed, Plaintiff's complaint refers to Claim 1 of the '130 Patent and Claim 30 of the '046 Patent "*for exemplary purposes only*." SAC at 4 n.1, 5 n.3 (emphasis added). Because, under *Bill of Lading*, "plaintiff need not even identify which claims it asserts are being infringed," 681 F.3d at 1335, the Court is reluctant to dismiss any of Plaintiff's claims of direct infringement by Sling as it cannot discern at this point which claims Plaintiff asserts Sling has infringed and what the proper scope is of those claims.

1 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)) (alterations omitted).

Therefore, with respect to Plaintiff's allegations of direct infringement, the Court cannot conclude at this juncture that Plaintiff has failed to allege a viable cause of action for direct infringement by Sling. Accordingly, Defendant's motion to dismiss Plaintiff's direct infringement claim is **DENIED** to the extent such a claim is based on direct infringement by Sling.

2. <u>Vicarious Liability</u>

Plaintiff also asserts claims of direct infringement on the basis of vicarious liability through the conduct of those other than Sling (namely its customers). In this regard, the law is clear that "a direct infringement claim may be successful if the plaintiff can show 'vicarious liability [which arises] when one party controls or directs the actions of another to perform one or more steps of the method.'" *Driessen v. Sony Music Entm't*, 2:09-CV-0140-CW, 2012 WL 130412, at *1 (D. Utah Jan. 17, 2012) (quoting *Centillion Data Sys., LLC v. Qwest Communications Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011)). However, such direction or control only arises when the parties form "an agency relationship or other contractual obligation to perform the steps." *Id.* (quoting *Centillion*, 631 F.3d at 1287).

Defendant argues Plaintiff has failed to allege a plausible theory of vicarious liabiltiy, and analogizes the instant case to that in *Centillion*. In that case, the plaintiff held a combination patent that required back-end computer systems and a personal computer data processing means. 631 F.3d at 1288. The plaintiff argued that the defendant was liable for direct vicarious infringement because it supplied software to customers that, when installed on a computer, would satisfy the "personal computer data processing means" claim limitation. *Id.* However, the district court rejected that argument and held that because the personal computer was a component of the claimed system, and the defendant did not supply or use that component, the defendant did not "make" or "use" each component of the system and therefore did not infringe under § 271(a). The Federal Circuit agreed that the defendant "manufacture[d] only part of the claimed system. . . . The customer, not [the defendant], completes the system by providing the 'personal computer data processing means' and installing the client software," and therefore the defendant did not "use" the system under § 271. *Id.*

9

1 To "use" a system, the Federal Circuit stated that the defendant must "put the claimed invention into
2 service, *i.e.*, control the system and obtain benefit from it. While [Defendant] may make the back-
3 end processing elements, it never 'uses' the entire claimed system because it never puts into service
4 the personal computer data processing means. Supplying the software for the customer to use is not
5 the same as using the system." *Id.* (internal citations omitted).

6 In addition, the Federal Circuit held that the defendant could not be vicariously liable for
7 direct infringement by the end user because "Qwest in no way directs its customers to perform nor
8 do its customers act as its agents. While Qwest provides software and technical assistance, it is
9 entirely the decision of the customer whether to install and operate this software on its personal
10 computer data processing means." *Id.* at 1287 (citations omitted). Instead, "for infringement to be
11 found when more than one party performs the steps of a method claim, an *agency relationship* or
12 other *contractual obligation* to perform the steps must exist." *Id*. (emphases added).

13 In the instant case, Defendant argues that like the defendant in *Centillion*, it cannot be held
14 vicariously responsible for infringing patents based on a third party's use of his or her own
15 computer. Motion at 7-11. Defendant argues it is not liable under a vicarious liability theory
16 because it does not direct or control its customers. *Id.* at 9-10.

17 The Court finds that *Centillion* controls here, and that Plaintiff has failed to alleged a
18 plausible theory of vicarious liability. Plaintiff alleges that Sling is vicariously liable because it
19 directs and controls its customers' infringement. SAC ¶¶ 10-13. Specifically, Plaintiff alleges that
20 Sling enters into a contract with its customers by requiring them to create a Sling account and to
21 install Sling's SlingPlayer software in order to use any of the Sling services for which the customers
22 have paid. *Id.* However, an allegation that Defendant provides the software and that customers
23 install the software when they use the Sling system does not allege that customers are contractually
24 *obligated* to use the software, nor does it allege that Defendant otherwise maintains control over the
25 software's operation. *Cf. Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1119
26 (Fed. Cir. 2002) (rejecting argument that, because individual users access software from their
27 computers, defendant cannot operate and control product use, *where software was stored on*
28 *defendant's server*) (emphasis added)). As the Federal Circuit explained in *BMC*, vicarious liability

attaches when a manufacturer "contract[s] out steps of a patented process to another entity," so that "a defendant cannot [] avoid liability for direct infringement by having someone else carry out one or more of the claimed steps *on its behalf*." 498 F.3d at 1381, 1379. Here, in contrast, even assuming some sort of contractual relationship between Sling and its customers whereby the customers must create an account and download software in order to use the Sling products, that contractual relationship does not *obligate* customers to do anything under Sling's control, nor does it mandate any action by customers *on behalf of Sling*. Customers do not act as Sling's agent under traditional agency theory.

To allow a vicarious liability claim based solely on a customer relationship, as Plaintiff alleges here, would run afoul of the Federal Circuit's warning in *BMC* that "expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement." *Id.* Because direct infringement is a strict liability offense, while indirect infringement requires a mens rea showing, it is important for courts to distinguish circumstances in which an alleged infringer merely gives a third party the tools with which to infringe (indirect infringement) from those circumstances in which the alleged infringer directly infringes through itself and its agents (direct infringement). "Under [Joao's] proposed approach, a patentee would rarely, if ever, need to bring a claim for indirect infringement." *Id.*

The doctrine of direct vicarious liability must be carefully circumscribed in order to remain faithful to its purpose and historical underpinnings. The vicarious infringement theory arose out of more traditional agency relationships, and thus attaches liability to the "mastermind" who controls or directs each step of the process. *BMC*, 498 F.3d at 1381. In contrast, "mere 'arms-length cooperation' will not give rise to direct infringement by any party." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (quoting *BMC*, 498 F.3d at 1371). Thus, "[u]nder *BMC Resources*, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Id.* at 1330 (finding developer of software and system for bond auctioneers not vicariously liable for conduct of, *e.g.*, the auctioneers and the bidders who bid on those bonds and pay fees to the defendant) (citing *BMC*, 498

11

F.3d at 1379). Plaintiff's alleged manufacturer-customer relationship does not suffice under such a standard.[3] Rather, Plaintiff's allegations with respect to Sling's conduct fall more properly within an indirect infringement theory, which the Court discusses below.

Moreover, to the extent the claims here would not be covered under an indirect infringement category, thus leaving Joao without a viable legal claim based on the conduct of consumers, any "concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting." *BMC*, 498 F.3d at 1381. Specifically:

> A patentee can usually structure a claim to capture infringement by a single party. *See* Mark A. Lemley *et al.*, *Divided Infringement Claims*, 33 AIPLA Q.J. 255, 272-75 (2005). In this case, for example, BMC could have drafted its claims to focus on one entity. The steps of the claim might have featured references to a single party's supplying or receiving each element of the claimed process. However, BMC chose instead to have four different parties perform different acts within one claim. BMC correctly notes the difficulty of proving infringement of this claim format. Nonetheless, this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims.

*Id.* (additional citations omitted). The Court's interpretation of the vicarious liability theory of infringement does not leave patentees without legal protection.

Accordingly, Defendant's motion to dismiss Plaintiff's direct infringement claims, to the extent they are based on vicarious liability for its customers' infringement, is **GRANTED**.

C.     Indirect Infringement

Finally, Defendant argues that Plaintiff makes out no other theories of infringement besides direct infringement, and that Plaintiff has abandoned all other theories of infringement by failing to re-plead them. Defendant also contends that Plaintiff agreed in a meet-and-confer that it would drop its indirect infringement claims. Plaintiff's counsel conceded at oral argument that its SAC did not

---

[3] The Court acknowledges that this case presents a closer call than *Centillion*, because unlike in *Centillion*, here, the customer must download the Sling software to his or her computer in order to use any of the Sling system. Thus, while a customer is under no binding obligation to download and use the software, as a practical matter, the purpose of purchasing the Sling system would be defeated if he or she declined to install the software, thus rendering the entire purchase inoperable. If something short of contractual obligation or an agency relationship would suffice to demonstrate vicarious liability, this case would present such an example. However, the Court does not read *BMC* and its progeny, as well as the purpose of the vicarious liability standard, to provide a basis for going down the slippery slope of ascertaining the degree of customer "coercion" on a case by case basis, an inquiry more properly the subject of an indirect infringement claim.

1 contain facts to support any indirect infringement claims, but requested leave to amend once again in
2 order to so allege. In addition, Plaintiff's counsel requested leave to amend to add two additional
3 patents to the action.

4 However, given the fact that this is Plaintiff's third complaint, and second round of motions
5 to dismiss, the Court declines to allow leave to amend, as Plaintiff has been given multiple chances
6 to amend its complaint to allege any and all claims. Moreover, Plaintiff expressly removed its
7 indirect infringement claims in a prior round of amendments. *See* Docket No. 99 at 6, 8-9 (Sling's
8 first motion to dismiss, explaining that Plaintiff's FAC had dropped general allegations of indirect
9 infringement); Docket No. 221 at 2 (Joao's opposition to Sling's motion, which concedes that it
10 alleges only claims for direct infringement). Thus, because Plaintiff has alleged no indirect
11 infringement for two rounds of complaints at this point, Plaintiff may not amend its complaint to re-
12 allege such allegations now. Plaintiff proffers no showing that its decision to re-assert its abandoned
13 claim is justified by newly discovered facts or changes in the law. Nor has it shown any other good
14 cause for reneging on its earlier decision to waive the claim. *See King v. Atiyeh*, 814 F.2d 565, 567
15 (9th Cir.1987) ("All causes of action alleged in an original complaint which are not alleged in an
16 amended complaint are waived.") (internal citation omitted); *see generally* Fed. R. Civ. P. 15(a);
17 *Foman v. Davis*, 371 U.S. 178, 182 (1962).

18 Accordingly, Defendant's motion to dismiss Plaintiff's indirect infringement claims is
19 **GRANTED** with prejudice. Plaintiff's request for leave to amend to re-allege indirect infringement
20 is **DENIED**, as is its request to amend to add new patents.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

13

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss as to Plaintiff's claim for direct infringement by Sling, and **GRANTS** the motion to dismiss as to all other claims. No further amendments to Plaintiff's complaint to cure any of the dismissed claims will be permitted.

This Order disposes of Docket No. 231.

IT IS SO ORDERED.

Dated: August 7, 2012

_____
EDWARD M. CHEN
United States District Judge